967 So.2d 400 (2007)
J. Michael JONES d/b/a Riviera Partners, LLC, Appellant,
v.
Richard WARMACK, Appellee.
No. 1D07-1553.
District Court of Appeal of Florida, First District.
October 19, 2007.
Christine D. Smallwood Miranda and John L. Gioiello of John L. Gioiello, P.A., Panama City, for Appellant.
*401 Simon H. Bloom, Atlanta, pro hac vice, for Appellant.
John L. Fishel, II, Panama City, for Appellee.
THOMAS, J.
In the case we have before us, Appellant ("Buyer") appeals the trial court's entry of summary judgment below, which effectively authorizes Appellee ("Seller") to keep $200,000 in earnest money deposits paid by Buyer. Buyer argues that it is entitled to a return of its deposits because it was, in fact, Seller who first breached the agreement between the parties by failing to provide marketable title. We agree with the trial court that Seller's actions did not constitute an anticipatory breach of the contract, and affirm.
The dispute in this case involves an Assignment Agreement ("the Agreement") entered into between the parties, whereby Seller assigned his rights and interests in two identical underlying land purchase contracts ("the contracts") to Buyer in consideration for $14 million. The Agreement required Buyer to make three earnest money deposits to an escrow agent on dates certain. Buyer timely made the first two deposits totaling $200,000. According to the terms of the Agreement, Buyer's third deposit of $200,000 was due on February 8, 2005.
In both contracts, Section 4 states:
4. TITLE: Seller has the legal capacity to and will convey marketable title to the Property by statutory warranty deed, . . . free of liens, easements and encumbrances of record or known to Seller, but subject to property taxes for the year of closing; covenants, restrictions, and public utility easements of record; and . . . zoning, density, release of leases; provided there exists at closing no violation of the foregoing and none of them prevents Buyer's intended use of the Property as Commercial.
. . . .
(b) Title Examination: Buyer will, within 15 days from receipt of the evidence of the title deliver written notice to Seller of title defects.
The contracts further provide that Seller had a "Curative Period" of ten days from the date of this notice to cure all title defects, but also note, "Seller may elect not to cure defects if Seller reasonably believes any defect cannot be cured within the Curative Period." If incurable defects were found, the contracts specifically gave Buyer ten days to either terminate the Agreement or accept title with the existing defects. The Agreement further specified that if one party breached or defaulted on any of the terms, the other party was entitled to the earnest money deposits.
On January 25, 2005, Seller timely provided a title commitment disclosing all requirements for, and exceptions to, the title insurance to be issued on the property. The next day Buyer provided Seller with a list of nine objections to the title.
On February 3, 2005, Seller responded to Buyer's objections, stating that although most of the listed objections would be cured at closing, some objections could not be cured.[1] In a letter to Buyer's counsel, Seller reminded Buyer that he now had ten days to decide whether to accept title or terminate the Agreement.
During this ten-day period, on February 8, 2005, Buyer's third deposit became due, and Buyer did not make the payment. On February 11, 2005, counsel for Seller notified Buyer that because Buyer failed to make the deposit required under the *402 Agreement, Buyer was in default, the Agreement was terminated, and Seller was entitled to keep the $200,000 in earnest money deposits.
Later that same day, counsel for Buyer faxed a correspondence to Seller stating that Buyer did not accept the title as written and that Buyer wished to cancel the Agreement. Buyer argued that it was entitled to a refund of its $200,000 in deposits because this notification occurred within the ten-day time period set forth in the contracts.
Buyer filed suit below, seeking a declaratory judgment that it was entitled to a refund of its deposits. The trial court granted Seller's motion for summary judgment and entered its final judgment determining that Seller was entitled to the $200,000 in earnest money deposits.
We are asked to determine which party breached the Agreement first. If one party to an agreement has breached the agreement, the other party's failure to continue with the agreement is not considered a default of the contract. See Reider v. P-48, Inc., 362 So.2d 105, 109 (Fla. 1st DCA 1978). Buyer alleges that Seller committed an anticipatory breach of the Agreement when Seller failed to cure the title defects. If such a breach occurred, Buyer's failure to pay the third deposit is not a default under Reider. Id. Conversely, if Seller's actions did not constitute a breach, then Buyer's failure to pay the deposit would be a default of the Agreement, and Seller would be entitled to the deposits. We agree with Seller, and do not read the contract provisions as restrictively as Buyer advocates.
As we stated in Barnett v. Destiny Owners Ass'n, Inc., "[i]t is the intent of the parties which is controlling." 856 So.2d 1090, 1092 (Fla. 1st DCA 2003) (citing Moore v. Stevens, 90 Fla. 879, 106 So. 901, 903-904 (1925)). "The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs." Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958) (citing U.S. Rubber Products, Inc. v. Clark, 145 Fla. 631, 200 So. 385 (Fla. 1941)). "In reviewing the contract in an attempt to determine its true meaning, the court must review the entire contract without fragmenting any segment or portion." J.C. Penney Co., Inc. v. Koff, 345 So.2d 732, 735 (Fla. 4th DCA 1977) (citing Royal Am. Realty, Inc., v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968), and Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465 (5th Cir.1968)).
Because the parties agreed that Seller had the right to choose whether to cure any title defects, and Buyer had the right to accept or reject title, Seller did not breach the contract. Under the language of the contracts as a whole, the parties did not intend the title to be without defect but, rather, to be the best title to which Buyer would agree; or stated a different way, a marketable title that satisfied Buyer.
We can find no reason for the remedial structure of section 4(b) to be included in the contracts other than to provide a means to resolve any objections regarding title. This provision gives Buyer the opportunity to raise objections, and Seller the option to cure those objections. The provision further gives Buyer the final say in accepting or rejecting Seller's cures. We do not accept Buyer's argument that Seller's delivery of a title with defects was an immediate breach of the Agreement, and all other provisions were superfluous. There is no language in the Agreement suggesting that, despite this remedial provision, defects in the title will terminate the Agreement.
*403 We also note that under the terms of the Agreement, Buyer maintained his right to have ten days to consider the title offered by Seller. The act of paying the deposit was entirely separate and distinct from the decision to accept or reject the title. At the moment Seller informed Buyer that some defects would not be cured, Buyer had two contractual responsibilities: (1) pay the third deposit by the due date; and (2) inform Seller on or before the tenth day if the Agreement would be accepted or terminated. Buyer's adherence to one responsibility did not excuse performance of the other.
Accordingly, we agree with the trial court that the only breach that occurred was Buyer's failure to pay the third deposit. Thus, under the terms agreed to by the parties, Seller is entitled to the $200,000 in earnest money deposits.
AFFIRMED.
BENTON and HAWKES, JJ., concur.
NOTES
[1] The title objections that could not be cured included a power line easement, a mineral rights reservation in favor of the State of Florida, and objections to the plat.